**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | : | |
| | : | Case No. 2:18-cr-85 |
| **Plaintiff,** | : | |
| | : | Chief Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Kimberly A. Jolson |
| **Eric Paul Lindahl,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

### I.     INTRODUCTION

This matter comes before the Court on Defendant Eric Paul Lindahl's Motion for Compassionate Release to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 44). The Government opposes release. (ECF No. 47). For the following reasons, the Court **HOLDS IN ABEYANCE** Defendant's Motion pending defense counsel's supplemental motion.

### I.     BACKGROUND

Defendant Eric Paul Lindahl ("Mr. Lindahl") is an imprisoned person seeking compassionate release in the context of the COVID-19 pandemic. Generally speaking, he argues that the spread of the virus, his age and health issues, and the conditions of his confinement constitute extraordinary and compelling reasons that warrant a reduction of the sentence he is currently serving. The Government opposes Mr. Lindahl's request, contending that he has failed to present such reasons. The Government further argues that consideration of the relevant factors set forth in 18 U.S.C. § 3553(a) leads to the conclusion that a sentence reduction is not warranted in this case.

On June 22, 2018, this Court issued an Order, (ECF No. 35), accepting Mr. Lindahl's plea of guilty to Count One of an Information, (ECF No. 24), charging him with conspiracy to possess with intent to distribute over 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii). On October 5, 2018, Mr. Lindahl was sentenced to a below-guidelines term of imprisonment of 100 months and a five-year term of supervised release. (ECF No. 42 at 1-3).

According to Mr. Lindahl, he submitted an administrative request for compassionate release on July 2, 2020, to the warden of FCI Yazoo City Medium ("FCI Yazoo"), where he is incarcerated. (ECF No. 44 at 2). He alleges that his request was "deleted" after forty-five days. (*Id.*). Mr. Lindahl also alleges that on August 14, he submitted a reminder of his request to the assistant warden, who confirmed receipt of the request three days later. (*Id.* at 2, 19). On August 18, Mr. Lindahl submitted another request for compassionate release to his "Case Manager," which was apparently received and sent to the appropriate authority that same day. (*Id.* at 2, 18). Mr. Lindahl reports that his requests were unavailing. (*Id.* at 2).

On November 3, 2020, Mr. Lindahl filed the instant motion for compassionate release. (ECF No. 44). His request is based on the COVID-19 pandemic, his age and health issues, and the conditions of his confinement at FCI Yazoo. (*Id.* at 6). Mr. Lindahl is fifty-five years of age. *See, e.g.*, (*Id.* at 20). He claims to suffer from hypertension or high blood pressure, anxiety, and sleep apnea, and he contends that such health problems place him at risk of severe illness were he to contract COVID-19. (*Id.* at 3). He argues that the conditions at FCI Yazoo create an optimal environment for the transmission of COVID-19. (*Id.* at 4). Mr. Lindahl asserts that he and his fellow inmates are being "medically neglected" because COVID-19 has caused staff shortages and testing for the virus is limited. (*Id.* at 6). He argues that, due to his age and health conditions, he is

2

in a "higher risk category," and that the prevalence of the virus at FCI Yazoo only heightens the risk he faces. (ECF No. 44 at 6). He also contends that because the pandemic has caused a modified lockdown at FCI Yazoo, he is sometimes in his cell for 23 hours in a day, which makes his incarceration "significantly more onerous than it otherwise would be." (*Id.* at 6).

The Government contests Mr. Lindahl's motion on two primary bases. First, it argues that Mr. Lindahl has failed to demonstrate extraordinary and compelling reasons justifying a sentence reduction. (ECF No. 47 at 4-7). With respect to hypertension, the Government notes that according to the CDC, that condition only "might" increase a person's risk for severe illness from COVID-19. (*Id.* at 5). It argues that to the extent Mr. Lindahl suffers from hypertension, there is nothing to indicate it is not being treated effectively or that it diminishes his ability for self-care while incarcerated. (*Id.* at 5). Additionally, the Government cites several cases for the proposition that hypertension does not qualify as an extraordinary and compelling reason justifying a sentence reduction. (*Id.* at 5). With respect to anxiety and sleep apnea, the Government points out that the CDC does not recognize such conditions as ones which might increase a person's risk for severe illness from COVID-19. (*Id.* at 5-6). It contends that other courts have concluded that such health issues, even when coupled with others, do not constitute extraordinary and compelling reasons justifying a sentence reduction. (*Id.* at 6). The Government concludes that Mr. Lindahl's request is premised only on a health condition that might increase his risk of severe illness, which "leaves the defendant's argument to rest almost entirely on the fact of the pandemic for his release." (ECF No. 47 at 6-7).

Second, the Government argues for denial of Mr. Lindahl's motion on the grounds that the relevant factors set forth in 18 U.S.C. § 3553(a) weigh against release. (*Id.* at 7-10). In short, it contends that Mr. Lindahl "committed a serious narcotics-trafficking offense, has a long history

of endangering the public and failing to follow the law, and remains a danger to the public." (*Id.* at 7).

## II. LAW & ANALYSIS

### A. Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may reduce a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). The Sixth Circuit held that this requirement is not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Alam*, 960 F.3d at 833. In *Alam*, the statute's requirement was characterized by the Sixth Circuit as a "mandatory condition." *Id.* at 834.

An individual may bring such a motion for compassionate release in this Court after thirty days have elapsed from the warden's receipt of her motion, "no matter the appeals available." *Id.* at 834. In *Alam*, the defendant seeking release had not waited thirty days before bringing his motion in federal court. *Id.* at 832. The Sixth Circuit explained that defendants are able to "pursue administrative review," but need not do so if thirty days have elapsed. *Id.* at 836. Following *Alam*, a motion for compassionate release will be ripe in either of the following circumstances: (1) if an incarcerated person receives a denial and is able to fully exhaust all of her administrative remedies *before* the thirty-day waiting period has elapsed; or (2) whenever an incarcerated person waits thirty days from the date she submitted her request to the warden, regardless of whether the warden responds.

Here, Mr. Lindahl filed the instant motion for compassionate release on November 3, 2020. (ECF No. 44). He alleges that on July 2, 2020, he submitted an administrative request for compassionate release to the warden of FCI Yazoo, which was "deleted" after forty-five days. (*Id.* at 2). On August 14, he submitted a reminder of his original request—or perhaps of a second request—to the assistant warden of his facility, (*id.* at 2), who three days later confirmed that Mr. Lindahl's "request ha[d] been received and sent to the appropriate party." (*Id.* at 19). The Government concedes that Mr. Lindahl was entitled to file his motion under 18 U.S.C. § 3582(c)(1)(A), agreeing that he "appears to have satisfied his exhaustion requirement." (ECF Nos. 46 at 1; 47 at 2 n.1). Considering Mr. Lindahl's allegations and the documents he submitted with his motion for compassionate release, as well as the Government's concession, this Court finds that over thirty days elapsed between the receipt by FCI Yazoo's warden of Mr. Lindahl's request and his filing of the instant motion. Accordingly, Mr. Lindahl has met the thirty-day waiting period imposed by 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary & Compelling Reasons

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or thirty-day waiting period has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d at 834. A district court's decision under Section 3582(c)(1)(A) will be reviewed for abuse of discretion, and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020) (quoting *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)).

In *United States v. Jones*, the Sixth Circuit recently clarified the mechanics of compassionate review where an incarcerated person brings a motion on her own behalf under 18

U.S.C. § 3582. Prior to *Jones*, the continued applicability of U.S. Sentencing Guideline § 1B1.13 in compassionate release proceedings brought directly by incarcerated persons had been unresolved. *Jones*, 948 F.3d at 1101. In *Jones*, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.*

The *Jones* court also clarified that district courts should follow a three-step analysis when considering motions for compassionate release. *Id.* at 1107-08. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id*. Second, a court must determine whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* at 1108. Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* at 1111. Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### 1. "Extraordinary and Compelling Reasons" Analysis

Under the analysis set forth in *Jones*, this Court must first determine whether "extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i). This court has "full discretion to define 'extraordinary and compelling'" without consulting the policy statement § 1B1.13." *Jones*, 948 F.3d at 1111.

As an initial matter, this Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerability. The spread of COVID-19 in prisons has been well documented, and FCI Yazoo, where Mr. Lindahl is confined, had 142 confirmed active cases among inmates and six among staff as of December 30, 2020.[1] Put differently, as of said date, FCI Yazoo had the sixteenth-highest number of inmate positives among 127 Bureau of Prison facilities and sixty-five residential reentry centers. *Id.*

The CDC has indicated that COVID-19 hospitalization and death rates are four- and thirty-times higher, respectively, for individuals between the ages of fifty and sixty-four compared to those for individuals between the ages of eighteen and twenty-nine.[2] Because Mr. Lindahl is currently fifty-five years old, his age indicates a higher risk of severe illness if he were to contract the virus.

With respect to Mr. Lindahl's medical conditions, the CDC has indicated that individuals with hypertension or high blood pressure might be at a higher risk for severe illness from COVID-19.[3] The medical documentation submitted by Mr. Lindahl indicates that he has a history of hypertension or high blood pressure and is prescribed daily medications for that condition. (ECF No. 44 at 24, 26). The Government does not dispute that Mr. Lindahl suffers from hypertension or high blood pressure; rather, it contends Mr. Lindahl is receiving adequate treatment for that condition. (ECF No. 47 at 5). The CDC, however, does not appear to distinguish between treated and untreated hypertension in its assessment that adults with that condition might be at an increased risk of severe illness from COVID-19.

---

[1] *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus, last accessed 12/30/2020 at 9:30 a.m.
[2] *See* CDC, *COVID-19 Hospitalization and Death by Age*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html, last accessed 12/30/2020 at 9:30 a m.
[3] *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last accessed 12/30/2020 at 9:30 a m.

A review of the records Mr. Lindahl submitted with his motion may also suggest that his health is compromised to some extent. First, he suffers from sleep apnea. He notes that he uses a continuous positive airway pressure machine for his sleep apnea, which is supported by his medical records, *see* (ECF No. 44 at 30, 33), but that he still has difficulty breathing. (*Id.* at 8). As the Government points out, however, the CDC has not indicated that individuals suffering from sleep apnea face any increased risk of severe illness. (ECF No. 47 at 5-6). Second, the record in this case suggests that Mr. Lindahl also suffers from "borderline diabetes." (PSR at 18 ¶ 61). Related to that condition, sought medical attention in April 2018 for blood in his stool and throat, (*id.*), and in his Motion Mr. Lindahl alleges that he is currently experiencing the former symptom. (ECF No. 44 at 9). The CDC recognizes Type I diabetes as a condition that might increase an individual's risk of severe illness from COVID-19 and Type II as a condition that increases the risk of severe illness.[4] Thus, Mr. Lindahl's borderline diabetes may also contribute to the probability of severe illness were he to contract the virus. Third, Mr. Lindahl has faced other health issues in the past. He has a history of hepatitis. *See, e.g.*, (ECF No. 44 at 25, 27, 31). He also underwent a colon resection for colon cancer in 2014. (ECF No. 44 at 27); (PSR at 18 ¶ 60). Taken together, Mr. Lindahl's present and past health conditions carry some suggestion that his health is compromised.

Considering in combination the current state of the COVID-19 pandemic; its effects on prison populations in general and the number of confirmed active cases among inmates and staff within FCI Yazoo in particular; Mr. Lindahl's age and the higher risks faced by persons in his age range; Mr. Lindahl's hypertension or high blood pressure, which might increase the risk of severe illness from COVID-19; and his other health issues indicated in the record, the Court finds that Mr. Lindahl has presented "extraordinary and compelling" reasons justifying a sentence reduction.

---

[4] *See People with Certain Medical Conditions*, *supra* note 3, last accessed 12/30/2020 at 9:30 a.m.

### C. Section 3553 Sentencing Factors Analysis

When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114 (citation omitted). A court does not need to "specifically articulat[e]" every single Section 3553(a) factor in its analysis; rather, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* at 1114-15. Section 3553(a) instructs a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Mr. Lindahl's Motion did not include discussion of the § 3553(a) factors. While it is true that the instant motion was written while Mr. Lindahl was *pro se* and such motions are reviewed with some leniency, he now has counsel. (ECF No. 45). On November 23, 2020, Mr. Lindahl's attorney gave notice that she did not anticipate filing a supplement to Mr. Lindahl's motion and "submit[ted] that . . . any argument [in Mr. Lindahl's Motion] is sufficient for this Court to consider a Compassionate Release of Lindahl." (*Id.* at 1).

The Government argues that Mr. Lindahl has a serious criminal history, and that if he were released more than five years early and after serving only one-third of his below-guideline sentence, the interests of adequate deterrence to criminal conduct and greater respect for the law would not be served. (ECF No. 47 at 8). Moreover, unwarranted sentence disparities would result and just punishment for Mr. Lindahl's offense would not be achieved. (*Id.*). Further, the Government argues that the Mr. Lindahl's offense was serious, because he engaged in the transportation of five kilograms[5] of methamphetamine from Oklahoma to Pennsylvania. (*Id.* at 8-9). It also argues that Mr. Lindahl's history and characteristics include a substantial criminal history involving dangerous and narcotics-related convictions extending back to 1995. (*Id.* at 9). Finally, it argues that protection of the public weighs in favor of denying Mr. Lindahl's motion, because his criminal history and the instant offense, committed "while carrying a gun," show "a lack of regard for the law or those around him." (*Id.* at 9-10).

This Court cannot give adequate consideration to Mr. Lindahl's Motion until his newly appointed counsel provides a detailed discussion of why a reduction in his sentence or early release would be consistent with the § 3553(a) factors, with a particular emphasis on why release would not present a danger to the safety of any other person or to the community. This question is

---

[5] Although the Government states that it was "5 kilograms" of methamphetamine, (ECF No. 47 at 9), "the relevant conduct is at least 1.5 kilograms but less than five kilograms . . . ." *See, e.g.*, (PSR at 4 ¶ 5).

particularly relevant since Mr. Lindahl has only completed approximately thirty-five months of his 100-month sentence. Accordingly, Mr. Lindahl's Motion will be held in abeyance until counsel files a supplement.

### III.   CONCLUSION

For these reasons, the Court **HOLDS IN ABEYANCE** Mr. Lindahl's Motion for Compassionate Release, (ECF No. 44), pending defense counsel's supplemental motion. Counsel will have until Wednesday, January 6, 2021, to file said motion. The Government will have until Monday, January 11, 2021, to reply.

**IT IS SO ORDERED.**

DATED:  December 30, 2020

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**